JONES v. CAVINS.

An office may exist without any duties attached to it.

The constitution of 1851 imposes no duties upon county auditors, but leaves their duties to be defined by the legislature.

The creation by the constitution of 1851 of the office of county auditor in each county, did not operate to revive the law prescribing the duties of the auditor of *Greene* county, which had previously been repealed.

The constitution of 1851 did not extend the operation of the laws in force at its adoption prescribing the duties of county auditors, beyond the boundaries then limiting them.

It simply declares that those laws shall be in force until they expire by their own limitation or are repealed by the legislature.

The office of county auditor was first created by an act of the legislature of 1841, and the duties pertaining to it, in the counties where it was created, were previously, for the most part, performed by the clerk of the Circuit Court, an officer created by the old and continued by the new constitution. In 1844, an act was passed, abolishing the office of county auditor, in *Greene* county, and restoring the duties then performed by the auditor in that county to the clerk. *Held*, that the clerk, by assuming the discharge of those duties, did not become the holder of two offices.

The law of 1844, which restored to the clerk of *Greene* county the duties which had been transferred from his office to that of the county auditor, was continued in force by the constitution of 1851.

The words "published" and "circulated," in s. 28 of art. 4 of the constitution of 1851, are used synonymously.

That part of s. 28 of art. 4 of the constitution of 1851 which declares that "no act shall take effect until the same shall have been published and circulated in the several counties," &c., means that such act shall not take effect in any county until it has been distributed to all.

Nov. Term,
1853.

Jones
v.
Cavins.

Monday,
November 28.

The R. S. 1852 did not take effect until they were distributed to all the counties in the state.

They were not distributed to all the counties until the 6th day of *May,* 1853.

APPEAL from the *Greene* Circuit Court.

Perkins, J.—Information filed in the *Greene* Circuit Court at the *April* term, 1853, under art. 44, vol. 2, of the R. S. of 1852, by *John Jones* against *Samuel R. Cavins.*

The information states that at the general election in *October,* 1852, *John Jones,* the plaintiff, was elected auditor of *Greene* county; that he was subsequently commissioned, gave bond, and in *March,* 1853, was sworn, &c.; that he had demanded the books, &c., pertaining to the office, of *Samuel R. Cavins,* who was in possession of them and was usurping the exercise of the functions of said office, &c., and that *Greene* county contained over 1,000 polls, &c.

*Cavins* answered, stating that on the first *Monday* of *August,* 1848, he was elected clerk of the Circuit Court of said county for seven years from the 27th day of *April,* 1849, and was afterwards duly qualified, &c., whereby he became vested with the right to discharge the duties the exercise of which he was charged with usurping, inasmuch as the legislature, in 1844, passed an act which had not been repealed, abolishing the office of auditor in *Greene* county and attaching the duties that had pertained thereto, to the office of clerk in said county.

Demurrer to this answer overruled, and final judgment for the defendant, *Cavins.*

The question going to the merits of the case is, whether the local law under which *Cavins* was discharging a portion of the duties of his office as clerk, was continued in force by the constitution of 1851.

It will aid us in understanding it to glance a little backward in beginning our investigation.

The office of county auditor was not known to the former constitution of *Indiana;* nor was it to the laws under that constitution, till 1841. The duties since that time assigned to it, in the counties where it has existed, were

before that date mostly discharged by the clerks of the Circuit Courts, officers created by the old, and continued by the new, constitution. In 1841, the office of county auditor was created by statute. But in 1844, the legislature passed an act (Gen. Laws 1844, p. 46) abolishing it in the counties of *Owen*, *Greene*, *Washington* and *Carroll*, and restoring the duties then performed by the auditors to the clerks in said counties. This act had not been expressly repealed at the formation of the constitution of 1851, nor at the commencement of this suit, and under it and the general law, *Cavins*, the defendant, was, at those times, holding the office of clerk in *Greene* county, with a prospective term of several years.

In 1851, the new constitution was adopted, containing this provision, viz.: "All laws now in force, and not inconsistent with this constitution, shall remain in force until they shall expire or be repealed;" and this further provision, viz.: "Every person elected by popular vote, and now in any office which is continued by this constitution, and every person who shall be so elected to any such office before the taking effect of this constitution, (except as is in this constitution otherwise provided,) shall continue in office until the term for which such person has been or may be elected, shall expire: *Provided*, That no such person shall continue in office after the taking effect of this constitution, for a longer period than the term of such office in this constitution prescribed."

Now, it is very obvious that these two provisions continued *Cavins* in office as clerk, and continued in force the act conferring upon him the duties of the abrogated auditor's office, if said act was not inconsistent with some other clause or clauses of the new constitution. It is claimed that it was inconsistent with two of its provisions, to-wit, that which declares that in all cases "where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state," (art. 4, s. 23); and that which declares that "there shall be elected, in each county, by the voters thereof, at the

Nov. Term,
1853.

JONES
v.
CAVINS.

time of holding general elections, a clerk of the Circuit Court, auditor, recorder," &c. (Art. 6, s. 2).

That said act was not inconsistent with the former of these two provisions, is decided in *The State* v. *Barbee*, 3 Ind. R. 258, where it is held that that provision was prospective in its operation, and would only affect legislation under the constitution of which it formed a part. This point will, therefore, be no further considered here.

Was it inconsistent with the latter of said two provisions? Upon the affirmative of this question, the counsel for the plaintiff mainly rely. Let us examine it with care.

In *August*, 1851, *Cavins* is in the office of clerk of the Circuit Court of *Greene* county, to which office certain duties are attached by a local law, which duties pertain to the office of auditor in certain counties. The office of auditor does not exist in said *Greene* county. A new constitution for the state is formed, and, at that date, adopted, which provides that an auditor shall be elected in said county, "at the time of holding general elections," the first of which said elections is to take place on the second *Tuesday* in *October*, 1852. Now, it is clear that no conflict existed between the law under which *Cavins* was acting and this provision of the constitution, from *August*, 1851, to *October*, 1852, as till then no auditor was to be elected in *Greene* county, and, of course, could discharge no duties in it. But in *October*, 1852, *Jones* is elected auditor in said county, and the question now arises as to the relation between him and *Cavins*, the clerk. Is the latter bound to surrender a portion of his duties to the former, and, if so, what? It devolves upon *Jones* to point them out before they can be adjudged to him. No law prescribing the duties to be performed by the auditor has been passed since the constitution created his office; and the simple fact that he is auditor of *Greene* county, does not authorize him to invade the clerk's office and take from the clerk his books, &c., and the discharge of any of his duties. The office of auditor

may exist without any duties attached to it. We have said no law had been enacted defining the duties of the auditor, but the constitution must also be looked into; for if his duties are there defined, his right to exercise them may be perfect without legislative action. Turning to it, we find this, and only this, ordained touching the point, viz., that all county officers, &c., shall "perform such duties as may be directed by law." Art. 6, s. 6.

The constitution, then, imposes no duties upon the auditor, but leaves him dependent, for any he may obtain the discharge of, upon the legislature; and that body may or may not, at its pleasure, assign them to him, and, should it do so, the duties assigned might be of a different character from any of those now performed by the clerk of *Greene* county—they might be taken from other officers, or new created.

There is no conflict, then, between the provision of the constitution under consideration and the law under which *Cavins* is discharging the official duties assigned him.

But it is argued that *Jones*, on being elected auditor, had a right to discharge the duties attached by law to the office in other counties in the state, or that were attached to it by a former law, in *Greene* county.

We are unable to discover any foundation upon which such a proposition can rest. As to the former law in *Greene* county, it had been expressly repealed, and we think the subsequent creation, by a constitutional convention, of the office of auditor, could not have the effect to revive it. That convention created the office, but did not assume to create its duties.

As to the laws prescribing the duties of auditors in force in other counties under the old constitution, and continued by the new, there is no clause in the latter, which, in terms, extends their operation beyond the boundaries then limiting it, or from which an intention to do so can be inferred. It simply declares that they shall be in force till they expire by their own limitation, or are repealed by a legislature. The convention that framed the constitution was not created to legislate; but to declare a

law in force in a portion of the state where it did not exist before, would be legislation. We do not think the convention attempted it in this particular, though we must not be understood as deciding upon its power to have done so. Great difficulty—indeed, actual impossibility—would practically attend the position assumed by counsel. The law in relation to county auditors was not uniform, at the making of the new constitution, in the counties in which such an officer existed; and if it be asserted that that instrument had the effect to extend some law on the subject over the state, then the question must be answered, which of the different laws existing in various parts of the state was the one that overrode all the others? The position, in fact, is scarcely reconcilable with the express language of the constitution, which is that the auditors shall perform such duties as "may be directed by law," evidently looking to future legislation under said new constitution.

We see nothing upon the point of *Cavins's* holding two offices, as, from what we have said in the cause, it appears that he held but one.

We conclude, then, that the law of 1844, which restored to the clerk of *Greene* county the duties for a time transferred from him to an auditor, was continued in force by the new constitution, because said constitution does not retransfer said duties, nor assign any other, to the auditor of said county.

Another question is made in the cause. The information, as we have stated, was filed pursuant to the provisions of the R. S. of 1852, in *April*, 1853, and it is contended by the defendant that those statutes were not then in force, as they had not been filed in all the counties of the state, though they had been distributed to the county of *Greene.* They were not distributed to all the counties in the state till the 6th of *May*, 1853.

The decision of this question must depend on the construction given to the following clause of the constitution:

"No act shall take effect until the same shall have

been published and circulated in the several counties of
this state, by authority, except in case of emergency;
which emergency shall be declared in the preamble, or
body of the law." Art. 4, s. 28.

On one side, it is insisted that, under this provision, a
general law, designed to operate throughout the whole
state, cannot take effect anywhere till it is distributed to
all the counties in the state; while, on the other, it is
claimed that every such law comes into force in each
separate county on its being filed therein. All agree
that the law does not operate over the whole state till it
is filed in all the counties of the state. The difference,
then, is in regard to the manner in which a law in this
state gets into force; one side contending that it comes
in at the same moment throughout the whole state; the
other, that it comes in by piecemeal, dragging its slow
length along through the period of two or three months.

By the common law, a statute took effect at once
throughout the jurisdiction to be governed by it. So it
did under our former constitution, where there was no
express legislative direction on the subject. In *England*,
a statute took effect from the first day of the session of
parliament enacting it. In this state, under the former
constitution, from the time it was "published in print, by
authority, at any place within the state." *Tredway* v.
*Gapin*, 1 Blackf. 299. It had, however, before the fram-
ing of the new constitution, become a common practice
for the legislature to provide that laws should take effect
in each county when filed therein, thus producing, for a
considerable length of time, an entire want of uniformity
in the laws in force.

In this state of things, the constitutional convention
framed the provision we have quoted, declaring that no
law should take effect till it was "published" and "cir-
culated" (two words, as here used, meaning the same
thing) "in the several counties of this state;" and we
think the intention was to arrest the piecemeal mode in
which laws had, for a time, been brought into operation,
and to make their taking effect a single entire thing

throughout the state. It seems to us that the language of the constitution will fairly admit of no other construction. It speaks of no partial taking effect of a law, no coming into force in the different or several counties, but it speaks of its taking effect as a single event, after distribution in the several counties. The term, "several counties," is used in connection with the distribution, not the taking effect of the laws. Had the language been that laws should take effect in the several counties on distribution, &c., the construction contended for by the plaintiff might have prevailed; but such is not the language; it is prohibitory and clear. It says that no law shall take effect, any effect, anywhere, till a certain condition precedent has been performed, viz., till it has been distributed in, not one or more, but the several counties of the state. Now, the several counties of the state are all the counties of the state. If the law enacted that no opinion should be delivered by the Supreme Court till it had received the approval of the several judges of said Court, would it be pretended that an approval by a less number than all of said judges would fill the requirement of the law?

We think the revised statutes did not take effect till distributed to all the counties in the state.

If it be said that inconvenience will result from this construction, we here only answer that one way in which it may be easily obviated, is by the legislature providing that hereafter evidence shall be furnished to the auditor of state of the time of filing the laws in the several counties, and that, upon their being filed in all, proclamation shall be made of the fact, in a certain number of days after which the laws should come into force.

We may remark that we do not decide that, had it been important to the plaintiff, he might not have amended, should it have been deemed necessary, his information.

*Per Curiam.*—The judgment is affirmed with costs.

*D. McDonald* and *J. Sullivan*, for the appellant.

*I. Blackford*, *G. G. Dunn*, and *W. T. Otto*, for the appellee.