May Term, 1861.

THE STATE
v.
BAILEY.

THE STATE, on the relation of BROWN, Prosecuting Attorney, &c. v. BAILEY and Others.

Whenever the acts, or any portion of them, of a session of the Legislature are distributed in a bound volume, in a manner and shape not substantially contrary to the statute on that subject, by the Secretary of State, through his agents appointed for that purpose, in all the counties of the State, they are distributed, or published, by authority.

The fact that directory provisions, as to the form of binding, character or color of materials, division into volumes, &c., may not be strictly followed by the Secretary of State, does not render the distribution of such as are prepared and distributed by him, any the less a publication by authority.

The question when a statute went into force, or whether it is at any given time a law or not, is a question for the judicial knowledge of the Courts.

The State Constitution recognizes a "joint resolution" as a means of expressing the legislative will, and by which some acts may be authoritatively performed by the Legislature.

As the Legislature is, by the Constitution, made the judge of the proper discharge by the Secretary of State of his official duties, when determining whether he shall be removed for a negligent discharge of those duties, so, by implication, that body has the power to direct him as to a proper discharge of those duties; and this may be done by joint resolution.

As the Secretary of State was directed by a joint resolution of the Legislature, of *June* 9, 1852, (Acts 1852, p. 178,) to publish the General Railroad Law, with four other laws, as soon as convenient, it will be presumed that he acted in accordance with this instruction; and as, by reasonable diligence, the Secretary could have caused their legal distribution before *February* 25, 1853, it will be presumed the acts mentioned were in force before that time.

Present insolvency, alone, is not sufficient to support an information in the nature of a *quo warranto* against a corporation.

It is not necessary that relief should be prayed at the close of each paragraph of an information, but the prayer at the close of the information will be taken distributively and applied severally to the paragraphs.

The directors of the corporation, alone, are authorized to receive real estate, and hence it would seem that real estate subscriptions can not be taken upon the preliminary articles of association; but, perhaps, the board after it is constituted, may receive real estate in payment of such preliminary subscriptions.

Corporations can only consolidate with the consent of the Legislature, and when a consolidation is thus effected it amounts to a surrender of the old charters, and the formation of a new corporation out of such portions of the old as enter into the new.

Those stockholders in the old who do not enter the new, are entitled to withdraw their shares, and may enjoin till they are secured.

APPEAL from the *Randolph* Circuit Court.

PERKINS, J.—Information in the *Randolph* Circuit Court, in the nature of a *quo warranto*, filed by the prosecuting attorney, in the name of the State, against certain persons who, it is alleged, are claiming to be a railroad corporation, and assuming to act as such, without being organized according to law.

The information is composed of four paragraphs:

The first charges that the defendants pretended to organize as a corporation, on *February* 25, 1853, and are assuming to act under the organization then made; while, at that time, there was no law in force, nor was there till *May* 6, then next following, permitting such organization as that made. The second and third paragraphs charge the filing in the office of the Secretary of State, of false and fraudulent articles of association, whereby the corporation was claimed to be organized. The fourth charges present insolvency of the corporation. A demurrer was sustained below to all the paragraphs of the information.

The paragraphs must be examined separately. We commence with the first: It charges, that the organization of the corporation was perfected prior to the taking effect of the law authorizing it.

Waiving the question, whether, if the fact be as alleged, that organization was not a continuous one, which the law operated upon, and made good when it came into force, the members of the organization not withdrawing nor dissenting, we proceed to inquire when the general railroad law of 1852 took effect.

The new Constitution, under which that law was enacted, provides that laws, except in cases of emergency, shall take effect from the time when they are distributed, by authority, in all the counties of the State. *Jones* v. *Cavins*, 4 Ind. 305. It seems to be necessary here, then, to ascertain the person or persons who had authority to distribute the statutes enacted by the Legislature. This is not a thing of difficulty. The code of 1843, and that of 1852, alike provide, that the distribution shall be made by the Secretary of State. R. S. 1843, p. 158; 1 R. S. 1852, p. 436.

Whenever, then, the acts, or any portion of them, of a session of the Legislature are distributed in a bound volume, in a manner and shape not substantially contrary to the statute on that subject, in all the counties of the State, by the Secretary of State, through his agents appointed for that purpose, they are distributed or published by authority. The fact that directory provisions as to form of binding, character or color of materials, division into volumes, &c., may not be strictly followed by the Secretary, does not render the distribution of such as are prepared and distributed by him, any the less a publication by authority.

When, then, was the general railroad law of 1852 distributed in all the counties of the State, by authority? In other words, when did the statute constituting that law, become the law of the State? This is a question for the Court to determine by judicial knowledge, not by evidence given on the trial of a cause. If it were to be determined as a fact, by evidence, on the trial of each cause, then a law might be decided in force upon one trial, and not in force upon another, in which the evidence touching the fact might differ from that upon the former trial. The inconvenience, the confusion, that would result from making the coming into force of a statute a question of fact for the jury, has led to the adoption of the principle everywhere, that it shall be a question of law for the judicial knowledge of the Court. The Court informs itself as best it can. Now, it takes judicial knowledge of the proclamation of the Governor, as to the time when the general volume of biennial statutes takes effect. Ind. Dig. 343.

So, whether a statute has been constitutionally enacted or not; in short, the question whether a statute is, at any given time, a law or not, is for the Court. Sedg. on Stat. 67–8; *id.* 82, 84; Dwarris, quoted by Sedgwick p. 118; 9 Ind. 20; 1 Greenl. § 4; 2 Blackf. 31; 4 *id.* 54, note; Ind. Dig. 265; *McCullough* v. *The State*, 11 Ind. 424.

The revised code of 1852, as a whole, did not take effect, as the Court from its judicial knowledge has already decided, till *May* 6, 1853. *Jones* v. *Cavins*, 4 Ind. 305. Did the railroad act take effect at an earlier date? It contained no

emergency clause. Nor did it require that the Secretary of State should publish it in advance of the other acts of the session. But, on *June* 9, 1852, the Legislature passed a joint resolution, which was approved by the Governor, instructing the Secretary of State to publish the statute in question, with four others, bound together in proper binding, as soon as convenient. Acts 1852, p. 178. The act in 1 R. S. 1852, p. 348, was not in force till *May* 6, 1853. If the Court is to presume that the Secretary acted in obedience to the joint resolution above referred to, then it will have to presume that the acts mentioned were in force before *February* 25, 1853; because, by reasonable diligence, the Secretary could have caused their legal distribution long before that time.

Will the Court presume that the Secretary acted under the resolution? Such presumption must be indulged if the resolution was a legal expression of the wish of the Legislature. It is said that a bill, not a joint resolution, was the necessary vehicle for conveying the direction of the Legislature to the Secretary.

The new Constitution ordains that "no law shall be enacted except by bill." Art. 4, § 1. And it is assumed by counsel for the State, that the direction given by the joint resolution could only have been given by a law, and that the joint resolution was not such.

The old Constitution provided that the style of laws should be, "Be it enacted by," &c.; and yet such was not the style of joint resolutions, and, hence, it may be argued that under the old Constitution joint resolutions were not laws. Const. 1816, art. 3, § 18.

Mr. *Cushing*, in his Law of Legislative Assemblies, § 2403, says: "A form of legislation, which is in frequent use in this country, chiefly for administrative purposes of a local or temporary character, sometimes for private purposes only, is variously known in our legislative assemblies, as a joint resolution, a resolution, or a resolve. This form of legislation is recognized in most of our constitutions, in which, and in the rules and orders of our legislative bodies, it is put upon the same footing, and made subject to the same regulations, with bills, properly so called. In Congress a joint resolution,

May Term, which is the name given in that body to this kind of legisla-
1861.  tion, is there regarded as a bill."

THE STATE      But we shall not attempt a definition of a joint resolution.
v.  It will be sufficient for our present purpose to say that, be it
BAILEY.
what it may, our Constitution recognizes it as a means for the
expression of the legislative will, (art. 4, §§ 18, 20, and 25,)
and by which some acts may be authoritatively performed
by the Legislature. That body may adjourn for more than
three days by such resolution (Const., art. 4, § 10); perhaps
grant a pardon (art. 5, § 17); perhaps suspend the operation
of a law (art. 1, § 26). It may remove the Secretary of State
from office for negligence in the discharge of his duty by a
joint resolution. Art. 6, § 7. See note to p. 565 of 2d vol.
of the 2d ed. of Story on the Const.

Now, perhaps the Secretary, in the exercise of his general
power to distribute the laws as soon as convenient, might
have distributed them by volumes, when severally prepared,
without waiting till all the volumes into which they might
be divided were bound and ready for distribution; still the
Court could not judicially take notice of such action, and,
hence, would not declare the laws thus distributed in force.
But the Court will take notice of the joint resolution, and,
through it, of the action of the Secretary under it, if the joint
resolution was a legal expression of the legislative will; and
we think it was. It directed the Secretary in regard simply
to the discharge of an administrative duty,—a duty which
the Legislature had been in the habit of directing the manner
of discharging, by joint resolution, since the first organization
of a territorial government in *Indiana*. See the code of
1807, and annual acts from that time till the passage of the
joint resolution in question. Indeed, it would seem too plain
for argument, that as the Legislature is made the judge, by
the Constitution, of the proper discharge of his duty by the
Secretary, when determining whether he shall be removed
for a negligent discharge, so that body, by implication, has
the power of directing him as to a proper discharge of his
duty, while acting as secretary.

We think the railroad law was in force before *February*
25, 1853.

The second and third paragraphs of the information charge a fraudulent organization, and we think allege facts sufficient to sustain the information on the part of the State. They could not have been set up by a contractor in defense to a suit by the corporation. He would have been estopped by his contract. See *The Buffalo, &c. Railroad Co.* v. *Hatch,* 20 N. Y. Rep. 157; *Chappel* v. *Hubbard,* 14 Ind. 601; *The Bank of Toledo* v. *The Int. Bank,* 21 N. Y. 542.

The fourth paragraph, charging simply present insolvency, we do not think sufficient. See *The Danville, &c. Co.* v. *The State,* at this term; *The State Bank* v. *The State,* 1 Blackf. 267; *John* v. *The Farmers, &c. Bank,* 2 Blackf. on p. 369; and the elaborate case of the *Eastern, &c. Co.* v. *Regina,* 22 Eng. L. & E. Rep. 328; S. C., 18 *id.* 167; 7 Ind. 90; Ind. Pr. 565.

It is argued, because the prayer for relief is not added to each paragraph of the information, that those paragraphs are defective; but we think the prayer for relief at the close of the information should be taken distributively, and applied severally to the paragraphs.

A word or two upon other points.

As the directors of the corporation alone, are authorized to receive real estate, and as they are not elected till after the subscriptions to preliminary articles are complete, it would seem that real estate subscriptions could not be taken upon such articles. But perhaps the directors, when in power, would have the right to receive, in good faith, payment in real estate of any subscription, if it appeared advantageous to the corporation to take it, in the given case. See *The Buffalo, &c. Railroad Co.* v. *Hatch, supra.*

The question of the power of corporations to consolidate has been discussed. It is held in *Lauman* v. *The Lebanon, &c. Railroad Co.,* 30 Penn. St. Rep. 42, that such consolidation can take place with the consent of the Legislature; that it amounts to a surrender of the old charters by the companies, the acceptance thereof by the Legislature, and the formation of a new corporation, out of such portions of the old as enter into the new; but that those stockholders in the old who do not enter the new are entitled to withdraw their

May Term,
1861.

THE TOLEDO,
&c. Co.
v.
SPEARES.

shares of the capital stock, and may enjoin till they are secured to them. See *McCray* v. *The Junction, &c. Co.*, 9 Ind. 358, 359; see Grant on Corp., side p. 19, note *c*. It may be observed, further, that the Supreme Court of the United States, in *Bacon et al.* v. *Robertson et al.*, 18 How. 480, has held, that on the dissolution of a once legal corporation, its personal and real property becomes assets for the payment of its debts and distribution among the stockholders, contrary to the doctrine asserted in most elementary works, and in *The State Bank* v. *The State, supra*. This doctrine seems to us to be right. See *Blake* v. *Holley*, 14 Ind. 383; and *Hardy* v. *Merriweather, id.* 203.

*Per Curiam.* — The judgment is reversed, with costs. Cause remanded, &c.

*Jer. Smith, John Davis, Silas Colgrove, J. W. Gordon* and *A. H. Connor*, for the State.

*O. P. Morton, W. Z. Stuart, W. A. Peele* and *A. L. Roache*, for the appellees.