## Case No. 9,891.

**MOWREY v. INDIANAPOLIS & C. R. CO. et al.**

[4 Biss. 78.] [1]

Circuit Court, D. Indiana. June Term. 1866.

INJUNCTION—NOTICE—CORPORATIONS—ACTS OF MA-JORITY—CHANGES IN CHARTER—BY LEGISLATURE—OBJECTIONS — ESTOPPEL — COURTS — FEDERAL JURISDICTION.

1. The national courts can not order temporary injunctions. except on reasonable notice to the adverse party or his attorney.

2. It is a general rule. that the acts of a majority of a body politic bind the whole corporation, when confined to its ordinary transactions, and consistent with the original objects of its formation.

3. When, at the time of subscribing stock in a corporation. there are existing laws by which the charter of the body politic may be fundamentally changed. such subscription must be presumed to have been made with a view to such laws, and to changes which may possibly be made conformably to them. And in such case a majority of the stockholders may adopt such changes against the will of a minority.

[Cited in Mower v. Staples. 32 Minn. 286, 20 N. W. 226.]

4. Under the provisions of the national constitution. prohibiting the states from making any law impairing the obligation of contracts, and in cases not falling within the foregoing rules. no fundamental change. even though authorized by subsequent legislation, can be made in the charter of a private pecuniary corporation without the consent of all the stockholders. unless the legislature has provided otherwise in the charter.

5. If a member of a Board of Directors of a corporation be present at the adoption of a resolution and aware of what is being done, and makes no opposition to its adoption, he must be presumed to have assented to it. But if such proceeding be merely preliminary to a decision by a subsequent vote of the stockholders on the consolidation of the corporation with another corporation. which can only be ultimately decided by the vote of all the stockholders. and not of the board of directors. such consent so given by a member of the board of directors. who is also a stockholder, does not estop him from afterwards objecting to the consolidation.

6. To effect a consolidation of railroad companies subsisting under special charters not providing therefor, the consent of every stockholder must be given: and any one dissenting stockholder is entitled to an injunction against such consolidation.

7. In a suit against a corporation in the United States circuit court for the state, by a citizen of another state. service of process within the state upon a joint defendant. a citizen of a third state, gives the court jurisdiction over him.

In equity.

Bartley & Burnett and McDonald & Roach, for complainant.

G. E. Pugh and Hendricks, Hord & Hendricks, for defendants.

McDONALD, District Judge. This is a proceeding in equity for an injunction. The bill was filed on the 28th of May, 1866. On the same day, the complainant, without notice to the defendants. and in their absence,

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

moved for a temporary injunction to operate till the motion could be fully heard on due notice on a day to be fixed by the court. As the bill stated facts indicating a pressing emergency, I then ordered that the defendants should be enjoined as prayed, till, on due notice to them, the motion could be fully heard on the fifth day of June, 1866. On the latter day, all parties appeared by counsel. The defendants then moved for a dissolution of the injunction already granted; and, at the same time, the complainant moved for a temporary injunction till the final hearing, or till the further order of the court.

The injunction ordered on the 28th of May was decreed without much consideration on my part. I followed a practice which had long prevailed in the courts of the state of Indiana. But, on further reflection, I think my order for a temporary injunction was premature. Equity would seem to demand that, in cases of emergency, where irreparable injury would follow unless an immediate injunction were ordered, the national courts should have power to grant temporary injunctions without notice of the application for them to the party enjoined. But the act of congress of March 2, 1793, forbids that any writ of injunction shall "be granted in any case without reasonable previous notice to the adverse party, or his attorney, of the time and place of moving for the same." 1 Stat. 335. In view of this act, as well as of the 55th rule in equity of the supreme court, it should seem that no special injunction can be granted by this court but on due notice. And in the case of New York v. Connecticut, 4 Dall. [4 U. S.] 1, the supreme court has decided that an injunction can neither be granted by the United States courts, nor any judge thereof, without due notice to the adverse party or his attorney. I, therefore, dissolve the injunction ordered on the 28th of May.

We proceed to consider the motion now made by the complainant for a temporary injunction. By the bill, it appears that Albert L. Mowrey, the complainant, is the owner of three hundred and thirty-one thousand five hundred and fifty dollars in the shares of the capital stock of the Indianapolis and Cincinnati Railroad Company; and that the defendant [Henry C.] Lord, is the president of the company. The corporation exists under a special charter from the Indiana legislature, granted before the adoption of the constitution of 1851.

The bill alleges that a negotiation has lately been set on foot to consolidate said company with the Lafayette and Indianapolis Railroad Company. To this consolidation it appears that the latter company has already consented. And it further appears that the board of directors of the Indianapolis and Cincinnati Railroad Company have called a meeting of their stockholders to obtain their consent to the consolidation.

The bill charges that, on the 10th of May

last, certain articles of consolidation were agreed to and signed by H. C. Lord, T. A. Morris, and W. Wright, a committee on the part of the Indianapolis and Cincinnati Railroad Company, and by W. F. Reynolds, a committee on the part of the Lafayette and Indianapolis Railroad Company. A copy of these articles is exhibited; and they purport to be the work of the boards of directors of the two companies, "by and with the assent of their respective stockholders." Among other things, these articles provide for the issuance by the consolidated company of bonds to the amount of two million eight hundred thousand dollars, of which two millions and a half are to be delivered to said Reynolds in trust, first, to pay all the expenses of such trust; second, to pay all the legal liabilities of the Lafayette and Indianapolis Railroad Company for their stock; third, to pay such stockholders of the Indianapolis and Cincinnati Railroad Company as desire to exchange their stock for these bonds. The articles provide that, after these payments, the residue of the bonds shall be appropriated in various ways unimportant to the present decision to be stated.

The bill also charges that in 1865 a corporation was organized to construct a railroad from Indianapolis to the Indiana state line in the direction of Danville, Illinois, by the name of the Cincinnati, Indianapolis, and Danville Railroad Company; that, at the instance of the defendant Lord, the complainant subscribed two hundred thousand dollars to the capital stock of that company, and other persons subscribed thereto one million eight hundred thousand dollars; that Lord, and the directors of the Indianapolis and Cincinnati Railroad Company, and the directors of the Lafayette and Indianapolis Railroad Company, are attempting to effect the said consolidation, with the fraudulent design to break down the Cincinnati, Indianapolis, and Danville Railroad Company, and render the complainant's stock therein worthless; that by issuing said bonds, the defendants intend to buy up therewith all the stock so, as aforesaid, subscribed to the road last aforesaid, except the two hundred thousand dollars subscribed by the complainant; and that with a view to that object, the said Lord has already, as president of the Indianapolis and Cincinnati Railroad Company, actually bargained for a considerable portion of the stock of the Cincinnati, Indianapolis, and Danville Railroad Company, agreeing to pay therefor said bonds when they shall be issued.

To all these doings the complainant objects as frauds on his rights; and he especially objects to said consolidation, insisting that the same can not be legally effected without his consent. I lay no stress on the averments in the bill touching the Cincinnati, Indianapolis, and Danville Railroad Company. That company is not a party to this suit; and if it were. I think the matters relating to it and its stock are not proper subjects of consideration in a bill whose principal object, evidently, is to enjoin the consolidation of two other railroads. Indeed, I suspect that to unite all these matters in one bill might make it multifarious.

Nor do I deem material any inquiry into the policy of the proposed consolidation. Whether such a consolidation would be beneficial or injurious to the stockholders in general, or would favorably or unfavorably affect the complainant's stock in particular, are matters to be considered and determined by them alone. The only question for the court is a question of power. Have these corporations the power to consolidate against the will of one of the stockholders? If they have, we will not disturb them in the exercise of that power; if they have not, we are bound to forbid its exercise.

The statute of Indiana, on the subject of the consolidation of railroad companies, gives the power to consolidate in general terms, without any provision as to the consent of stockholders. 1 Gavin & H. p. 526. While, therefore, the general power of consolidation without doubt exists in this state, yet, whether such consolidation—especially in the present case—can be legally effected, without the consent of all the stockholders, cannot be determined by any Indiana statute, but must depend on general principles of law.

We have seen that complainant is a stockholder in the Indianapolis and Cincinnati Railroad Company to the amount of three hundred and thirty-one thousand five hundred and fifty dollars. He insists that by virtue of this interest he is entitled to object to the proposed consolidation, though every other stockholder in the two companies should desire it. If in this he is right, the injunction must be granted; otherwise, not. And this is the great question in the case.

It is certain that the proposed consolidation, if effected, would work a material and fundamental change 'n the corporation in which the complainant holds his stock. Nay, it would extinguish that corporation; for it is well settled that the consolidation of two railroad companies under the Indiana statute extinguishes them both; and that the consolidated institution is a new corporation, distinct from both the old ones out of which it was formed. State v. Bailey, 16 Ind. 46.

I think the following propositions may be laid down as clear law:

1. It is not to be doubted that, as a general rule, the acts of a majority of a corporation are binding on the whole, when confined to its ordinary transactions, and consistent with the original objects of its formation. Troy & R. R. Co. v. Kerr, 17 Barb. 581, 604; 1 Kyd, Corp. 422; Ang. & A. Corp. (2d Ed.) pp. 53, 396.

2. In all cases, where at the time of subscribing stock in a corporation, there are existing laws by which the charter of such corporation may be fundamentally changed, such subscription must be presumed to have been

made with a view to such laws and to changes which may possibly be made conformably to them; and in such case, a majority of the stockholders may adopt such changes against the will of a minority. Bish v. Johnson, 21 Ind. 299.

3. Under the provision of the national' constitution prohibiting the states from making any "law impairing the obligation of contracts," and in cases not falling within the proposition last above stated, no fundamental change, even though authorized by subsequent legislation, can be made in the charter of a private pecuniary corporation, without the consent of all the stockholders, unless the legislature has provided otherwise in the charter. 2 Redf. R. R. 575, 576.

The defendants' counsel have argued that the case of Clearwater v. Meredith, 1 Wall. [68 U. S.] 25, is opposed to the last of these propositions. But I think that case sustains it. In Clearwater v. Meredith, the question of the consolidation of two railroad companies was discussed. Clearwater was a stockholder in one of these roads. And Mr. Justice Davis, who delivered the opinion of the court, said that "Clearwater could have prevented this consolidation had he chosen to do so."

The only American case which I have found, and which seems opposed to this proposition, is that of Lauman v. Lebanon Val. R. Co., 30 Pa. St. 42. This case decides that a single stockholder has no right to object to the consolidation of the company in which he holds stock, with another railroad company. The learned chief justice who pronounced this decision cites no authority in support of it. His reasoning on it seems to me not very satisfactory. It may be right under Pennsylvania laws touching railroad corporations. But it is singularly inconsistent with the judgment rendered in the case, which was that the complainant could not be made a stockholder against his will in the consolidated company; and that the consolidation should be enjoined till he was secured in the payment of the value of his stock. Why enjoin the consolidation at all, if he had no right to object to it. His objection in that case seems to have been pretty effectual.

There is, indeed, a dictum in the case of State v. Bailey, 16 Ind. 46, which seems to favor the Pennsylvania doctrine above mentioned. It is to the effect that in the case of the consolidation of two railroad companies, "those stockholders in the old who do not enter the new, are entitled to withdraw their shares in the capital stock, and may enjoin till they are secured." This may be true, if the objecting stockholder should choose to adopt that course. But is he bound to adopt it as his only remedy? Is he bound either to sell out his stock in this way, or to abandon it, or to become a stockholder in the consolidated company? Would not forcing him to either of these alternatives be a violation of his contract? Directly opposed to the case in

30 Pa. St., and to the dictum in 16 Ind., so far as these maintain the doctrine that a single stockholder has no right to object to a consolidation, is the well-considered case of Stevens v. Rutland & B. R. Co., 29 Vt. 545. This case expressly decides that any stockholder in a railroad corporation may have an injunction against the other corporators to prohibit any fundamental change in the original purpose of the act of incorporation, though the proposed change be authorized by an act of the legislature. And, in perfect agreement with this ruling, it is well settled in Indiana, that the consolidation of two railroad corporations, against the consent of a subscriber of stock to one of them, releases him from the payment of the stock thus subscribed. Sparrow v. Evansville & C. R. Co., 7 Ind. 369; McCray v. Junction R. Co., 9 Ind. 358. These cases proceed on the just view that the relation between a stockholder and the corporation is one of contract; and that every fundamental change in its charter, made against his consent though on the authority of a subsequent act of the legislature, is a violation of that contract, and is forbidden by the national constitution. Now if, as is the rule in Indiana, a consolidation against the will of a subscriber of stock releases him from paying it because it is a breach of his contract, it must inevitably follow that, if, as in the case at bar, the subscriber has already paid for his stock, such consolidation against his will is equally a violation of his contract. Everybody knows that if several men enter into a valid contract, it cannot be fundamentally altered but by unanimous consent. Why should a different rule prevail as between corporators?

Upon the whole, I think that if the case made by the complainant does not fall within either the first or second of the propositions which I have above laid down, and does fall within the third, he is entitled to relief in equity. It cannot be insisted that the proposed consolidation is within the first of these propositions. For, as already shown, the consolidation would not only fundamentally affect the Indianapolis and Cincinnati Railroad Company as a corporation, but it would destroy its very existence.

The defendants, however, argue, that the case at bar is within the second, and not the third, of these propositions, both because the charter of the Indianapolis and Cincinnati Railroad Company has been so amended as to meet the complainant's objection, and because he has consented to the consolidation. I will consider these points separately.

First. As to the amendment of the charter of the Indianapolis and Cincinnati Railroad Company: The 35th section of that charter reserves to the legislature "the right at any time to alter or amend it, two-thirds of both branches concurring therein." Under this section there can be no doubt of the power of the legislature to amend the charter, even against the will of every stockholder. But it may be

more doubtful whether under this reserved power, the legislature could consolidate this corporation with another against the will of the corporators. For that would be to destroy, not "to alter or amend," the charter. Be this as it may, however, if no amendment authorizing the consolidation in question has been made, it is obvious that the complainant's rights are the same as if the power to amend had not been reserved. But the defendants insist that an amendment altering the rights of the complainant has been made to the charter. The amendment to which they refer is the Indiana act of February 23, 1853,—a general law authorizing the consolidation of railroad companies. 1 Gavin & H. p. 526.

The Indiana constitution of November, 1851, prohibits the legislature from passing special acts of incorporation, and authorizes the passage of general laws of incorporation. Under this provision, the general railroad act of 1852 was passed. It provided rules under which any company of men might become a railroad corporation. Its 37th section reserved to the legislature the right to amend or repeal the whole act. And the supreme court of Indiana, I think, justly regard as an amendment of it, the above-mentioned act of February 23, 1853.—the only act in this state authorizing the consolidation of railroad companies. We must then regard the last-named act as being substantially part and parcel of the general railroad law of Indiana. We must bear in mind, however, that the charter of the Indianapolis and Cincinnati Railroad Company is a special act, passed before the constitution of 1851. And the question is, does the general railroad law above referred to effect such an amendment of this special charter as is contemplated by its 35th section, which reserves the power to alter or amend the charter? I think it does not. We may well suppose that the only object of the reservation in the 35th section of this special charter was to retain in the legislature a power, which, without the reservation, could not be exercised,—a power to amend the charter authoritatively and without the consent of the railroad company. On the contrary, the consolidation act of 1853 is a mere privilege, allowing—not obliging—railroad companies to consolidate if they please to do so. Such a privilege the legislature doubtless could have offered, and perhaps did offer, by the act of 1853, to the Indianapolis and Cincinnati Railroad Company, just as well, and with exactly the same effect, without the said reservation in its charter, as with it. Besides, the privilege thus offered would be utterly inoperative as an amendment of the charter, till it was accepted by the company. Now the acceptance of this offered privilege would involve a fundamental change in the charter of the company accepting it,—a change which, if the doctrine already stated be true, could not be effected in the case of a corporation subsisting under a special charter, but by the consent of every stockholder. So far as appears, no such consent has ever been given by all the stockholders, or even by a majority of the stockholders, of the Indianapolis and Cincinnati Railroad Company. I conclude, therefore, that the general law of 1853, permitting railroad companies, at their pleasure, to consolidate, has never become part and parcel of the charter of the company in question, either by legislative amendment or otherwise.

Second. Has the complainant consented to the consolidation under consideration? And is he by such consent now estopped to insist on his objection to the consolidation? It appears that he was one of the directors of this company on the 24th of May, 1866. On that day, the board of directors met to consider the subject of this proposed consolidation. He was present, and did not object. On the contrary, it appears by the minutes of the board, of that day, that the committees already mentioned then reported to the board the terms of consolidation agreed on by them; whereupon the board unanimously approved of the action of the committees reported, and the consolidation of the two companies upon the terms and conditions agreed to by the committees; and the board then and there recommended to the stockholders to consent to the consolidation, and they called a meeting of the stockholders to be held on a designated day in order that they might vote on the question of the consolidation. Immediately on the conclusion of these transactions of the board, the complainant resigned his office of a director. But the weight of the evidence before me strongly indicates that, so long as he remained a director, he made no objection to any of these proceedings, though he was present, might have objected if he pleased, and well knew what was going on. Under these circumstances, I think he ought to be considered as consenting to what was done. "Qui non prohibit quod prohibere potest, assentire videtur."

But does this consent, given under these circumstances by the complainant, estop him to urge the present objection to the consolidation? The proceedings of the board of directors as above detailed were merely prefatory and preparatory to the settlement of the question of consolidation. Certainly no decision of the board could effect the consolidation. To do that, required the decision of the stockholders. So the board understood it, else they would not have called a meeting of the stockholders to vote on the question. And the very articles of consolidation reported to, and approved by, the board at that time, recited that the consolidation was to be effected "by and with the assent of the stockholders." And as the board fixed a day for the taking of the vote of the stockholders, and as the board evidently meant to refer the settlement of the question to them, it must have been understood that if the stockholders voted against the consolidation the whole thing would fail. It may fairly be presumed that all these di-

rectors were stockholders. Under all the circumstances, it seems very clear that all these directors holding stock would have the right to attend on the day appointed and vote for or against the consolidation. If any of them proposed then to vote against it, no man would have had a right to tell him, "You must not vote so: you are estopped to do so, because you voted for the consolidation on the board." To such an objection, he might well answer: "I voted then not as a stockholder, but as a director, guided by the best light I then had. Now I exercise my right as a stockholder. Besides, I have changed my opinion. I think now that the proposed consolidation would be injurious to my interests; and so I shall oppose it."

I cannot conceive how any vote of the complainant as one of the board of directors could destroy his right to vote as he pleased as a mere stockholder. Surely there remained to him and to all the directors the locus poenitentiae. After their action on the board they may have changed their minds. They had a right to do so up to the moment of the final voting by the stockholders, just as a bidder at an auction has a right to withdraw his bid before the property is knocked off to him. In all he did on this subject, there appears to have been nothing fraudulent, nothing deceitful, nothing injurious to any other stockholder. And there is nothing in his conduct throughout the whole transaction bearing the slightest resemblance either to a legal or equitable estoppel.

It has been urged on the part of the defendant, Henry C. Lord, that this court has no jurisdiction over his person; and that therefore we can make no order enjoining him. This objection is made on the ground that he is not a citizen of Indiana. The bill states that the complainant is a citizen of New York; that Lord is a citizen of Ohio; and that the Indianapolis and Cincinnati Railroad Company is an Indiana corporation. It appears that Lord was served with process in this case in this district. Under these circumstances, I should think that we could not take jurisdiction of the person of Mr. Lord by virtue alone of the eleventh section of the judiciary act of 1789 (1 Stat. 78). But the act of February 28, 1839, must be considered in connection with the judiciary act (5 Stat. 32). A fair construction of both these acts, I think, gives us jurisdiction of the person of Mr. Lord in this case. I suppose that a citizen of New York may sue a citizen of Ohio in this court if he is served with process in the district of Indiana. This seems to be now the practice in the United States courts. Whether Mr. Lord is either a necessary or a proper party to this suit, is another question,—a question not necessary to be decided on the present motion.

In view, then, of the whole case, I am reluctantly led to the conclusion that the complainant's motion for a temporary injunction ought to be granted. Therefore, it is ordered.

adjudged, and decreed, that upon the complainant filing an injunction bond in the penalty of one hundred thousand dollars, with the usual condition and sufficient sureties to be approved by the court, the said Indianapolis and Cincinnati Railroad Company, its board of directors, officers, and agents, be enjoined, till the further order of this court, from proceeding any further to consummate the said proposed consolidation, or to. issue any of the bonds mentioned in the complainant's bill, or to apply any of such bonds or any of the funds or property of said company to the purchase of stock in the Cincinnati, Indianapolis and Danville Railroad Company.

NOTE. In a case recently (July, 1874) heard at Madison, Wisconsin, before Judges Davis, Drummond, and Hopkins (Piek v. Chicago & N. W. R. Co. [Case No. 11,138]), it was held that a provision of the constitution of the state that railroad charters "may be altered or repealed by the legislature at any time after their passage," underlies all subsequent grants of rights and franchises to the railroad corporations of the state; that stock and securities in such corporations were taken and held subject to this paramount condition, of which, in law, all holders had notice; and that such corporations could not clothe their creditors with greater rights, as against the state, than it possessed itself: and that this principle was not changed by authority from the legislature to consolidate with other railroads.

The mere presence of a person at a lawful meeting does not make him responsible for a resolution there passed, if he protests against it: and where a director opposed a resolution, but, finding himself in a minority, insisted on the insertion of certain terms, believing that such insertion would prevent the plan of the majority from being carried out, held, that he was not responsible on the plan being carried out on those terms. In re Direct East & West Junction Ry. Co., 31 Eng. Law & Eq. 430.

The act of February 28, 1839, was passed to remedy the inconvenience under the settled construction of the judiciary act of 1789, by which, when there was more than one party, plaintiff or defendant, the court must have jurisdiction between each party, plaintiff and defendant, or the action could not be maintained. Taylor v. Cook [Case No. 13,789]. This act of 1839, however, wrought no change in the jurisdiction of the circuit courts, as respects the character of the parties: it only obviates difficulties arising from inability to join or serve those not liable to be sued by the plaintiff, or not within reach of process. Commercial Bank of Vicksburg v. Slocomb, 14 Pet. [39 U. S.] 60.

This act relates solely to the non-joinder of persons who are not within the reach of the process of the court. It does not affect any case where persons having an interest are not joined because their citizenship is such that their joinder would defeat the jurisdiction; and, so far as it touches suits in equity, we understand it to be no more than a legislative affirmance of the rule previously established by the cases of Cameron v. McRoberts, 3 Wheat. [16 U. S.] 591: Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738: and Harding v. Handy, 11 Wheat. [24 U. S.] 132: Shields v. Barrow, 17 How. [58 U. S.] 141. If the absent defendant be a resident of the same state with the plaintiff, the jurisdiction cannot be sustained, as the suit would not be, as between them, a suit between citizens of different states. Bargh v. Page [Case No. 980].

Several of the above cases are commented upon in Louisville, C. & C. R. Co. v. Letson, 2 How. [43 U. S.] 497, in which case the court say (page 557): "We think, as was said in the case of

Commercial Bank of Vicksburg v. Slocomb [supra], that this act was intended to remove the difficulties which occurred in practice, in cases both in law and equity, under that clause in the 11th section of the judiciary act, which declares that no civil suit shall be brought before either of said courts against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ; but a re-examination of the entire section will not permit us to reaffirm what was said in that case,—that the act did not contemplate a change in the jurisdiction of the courts as it regards the character of the parties."

Consult, also, Heriot v. Davis [Case No. 6,404]; Clearwater v. Meredith, 21 How. [62 U. S.] 489.