Filed March 10, 1886.

———————◆———————

No. 12,111.

HOLMAN ET AL. *v.* THE STATE, EX REL. GIBSON, PROSECUTING ATTORNEY.

RAILROAD.—*Formation of Corporation.*—*Subscription to Stock.*—*Must be in Good Faith.*—*Ability to Pay.*—Under the statute providing for the formation of railroad corporations and requiring stock to the amount of at least fifty thousand dollars to be first subscribed, the subscriptions must be made in good faith, by persons who have a reasonable expectation of ability to pay.

SAME.—*Quo Warranto.*—*State not Concluded by Articles of Association.*—In a direct proceeding by the State, by *quo warranto*, against individuals who assume to act as a railroad corporation, requiring them to show cause for so acting, a showing by the defendants of the filing of articles of association and a subscription of the minimum amount of stock required by law is not conclusive upon the State.

SAME.—*Insolvency of Subscribers.*—*Forfeiture.*—Where it is established in such proceeding that the subscribers to a large part of the fifty thousand dollars of stock are insolvent, and were so at the time they subscribed, with no expectation of ability to pay, a forfeiture will be declared.

From the Huntington Circuit Court.

*L. M. Ninde* and *T. E. Ellison*, for appellants.

*C. W. Watkins, L. P. Milligan* and *O. W. Whitelock*, for the State.

MITCHELL, J.—The State, by an information in the nature of a *quo warranto*, charged that William J. Holman and ten others were assuming to act as a corporation under the name of the Fort Wayne, Warren and Brazil Railway Company; that, as such corporation, they were making contracts, incurring debts, soliciting aid from townships, towns and cities, making surveys, appropriating lands, etc., without any warrant or authority of law. They were challenged to show by what authority they assumed so to act.

By a special answer the defendants admitted they were acting as a railway corporation, and alleged that they were duly organized and incorporated under the law. With their answer they exhibited a copy of their articles of association, which they averred had been duly filed in the office of the secretary of state. Upon the articles thus exhibited, it appeared that fifteen persons had each subscribed for $3,400 of the capital stock, the whole amount of which was fixed at $60,000.

A reply was filed admitting the signing and filing of the articles of association, and the subscription to the stock. It was, however, averred that many of the subscribers to the stock were, at the time of making such subscriptions, wholly and notoriously insolvent; and made no pretence of being able to pay their subscriptions, and that others of such subscribers were not worth half the amount subscribed by them; that the solicitor of the subscriptions and promoter of the corporation was a subscriber to the stock, was wholly and notoriously insolvent himself, and knew of the insolvency of many of the other subscribers; that one of the subscribers, in addition to being insolvent at the time of making his subscription, was also a minor, which was known to the promoters of the scheme. It was further charged that the capital stock had not been subscribed in good faith, but that the subscriptions were received for the purpose of securing a colorable organization to be made on paper. Evidence was

offered tending to prove the averments contained in the reply. A judgment of forfeiture was rendered.

The statute providing for the organization of railroad corporations enacts, in substance, that whenever stock to the amount of at least $50,000, or $1,000 for each and every mile of the proposed road shall have been subscribed, any number of the subscribers not less than fifteen may, under certain regulations prescribed, form a railroad corporation.

The question presented for consideration is, must the $50,-000 of stock, which is required to be subscribed as a condition precedent to the organization, be subscribed in good faith by persons who had a reasonable expectation that they will be able to pay, or will subscriptions, some of which are merely simulated, fulfil the purposes of the statute?

Where the information is against the corporation *eo nomine,* an inquiry such as that proposed can not be made. In such a case, the bringing of the suit against the corporation in its corporate name is an admission of its corporate existence, and it is not necessary for the corporation to show that it had performed the conditions precedent to its corporate existence. High Extra. L. Rem., section 661. So, also, where the question of the regularity of the organization is made in a collateral proceeding, it is not admissible to show the insolvency of subscribers to the stock. It was accordingly held in *Miller* v. *Wild Cat Gravel Road Co.,* 52 Ind. 51, that, in a suit upon an unconditional subscription of stock, evidence of the insolvency of some of the subscribers was immaterial.

There are cases which hold that an assessment against a subscriber to stock can not be collected until, at least, the minimum amount required by the statute has been subscribed by persons apparently able to pay for the shares subscribed. In such cases, the subscriptions of insolvent persons, infants and married women are not counted. *Lewey's Island Railroad Co.* v. *Bolton,* 48 Maine, 451; *Phillips* v. *Covington, etc., Bridge Co.,* 2 Met. (Ky.) 219; Morawetz Corp., section 279; Pierce Railroads, p. 55, and notes.

The fact that some of the subscribers to the stock of a corporation became insolvent after such subscriptions were made, will not of itself support an information in the nature of a *quo warranto*. *State, ex rel.,* v. *Bailey,* 16 Ind. 46.

The case before us is an information by the State challenging the right of certain individuals to act as a corporation, and asserting that by reason of the colorable character of the subscriptions they never became an incorporation. It is therefore a direct inquiry on behalf of the State, calling upon the individuals named to show by what authority they assume to act as a corporation.

In such a case, while it may be sufficient, *prima facie,* to show the filing of articles of association and a subscription of the minimum amount of stock required by law, we do not think such showing is conclusive upon the State. It is true the statute does not in terms prescribe that the subscriptions must have been made in good faith, or that the subscribers must have been at the time of making their subscriptions solvent, and apparently able to pay.

But it must be implied, that, at least between the State and the persons to whom the privilege of erecting themselves into a corporation is granted, good faith and fair dealing should be observed.

Merely simulated subscriptions, made by persons who are neither actually nor apparently able to pay the amount subscribed, can not answer the purpose of the statute. Such subscriptions are shams, and are to be denounced as a fraud upon the law. They are an attempt to acquire corporate functions, not by a compliance with the law, but by a disingenuous evasion of it. *Jersey City Gas Co.* v. *Dwight,* 29 N. J. Eq. 242.

Such subscriptions must stand upon the same basis, and be determined upon the same considerations, that govern any other business transaction.

It can not be doubted that a person may in good faith become a subscriber to the stock of a corporation, as he may

become the purchaser of goods, for a sum larger than he is then able to pay, and more than he is at the time actually worth in property. But such a subscriber must have subscribed in good faith, with a reasonable expectation and an apparent prospect of being able to pay assessments on his stock as they might thereafter be called for.

Where, however, a subscriber is both insolvent and has no prospect or expectation of being able to pay, and such subscription is taken with knowledge, it can not be counted in making up the minimum required by statute.

When articles of association were tendered with a subscription of $50,000 to the capital stock by fifteen persons, it was a representation that that amount was pledged and available as necessity might require. Upon the faith of that representation the State authorized the persons making it to assume the functions and franchises of a corporation.

On the same principle that one individual may reclaim his property which has been sold to another, who is insolvent, and who had at the time no intention to pay, or prospect of being able to pay for it, the State may reclaim the privilege granted by it under like circumstances.

Standing by until important interests were acquired by the corporation might estop the State, or lapse of time might cure the defect in the organization. *State, ex rel.,* v. *Gordon,* 87 Ind. 171. Nothing of that kind is either pleaded or proved in this case.

It is abundantly established by the evidence that most of the subscribers to the stock had not only neither the ability, actual or apparent, at the time they subscribed, to pay any calls; but it appears further that they had no purpose or expectation that they would be called upon to pay, or that they could pay anything if called upon.

As a condition to its assent to the grant of corporate powers to a railway company, the State requires that an available capital of at least $50,000 shall be provided as a security for persons with whom the corporation proposes to transact busi-

ness, and as a guaranty that it will prosecute the proposed work. If obtaining merely feigned subscriptions puts it beyond the power of the State to withdraw its assent, then it is within the power of designing persons to obtain the franchise of a corporation by a merely pretended compliance with the law, and by that means exclude others who might execute a beneficial public improvement, while the existing corporation is wholly unable to do anything except to harrass those who may be induced to deal with it.

We think the evidence sufficiently shows that the defendants held themselves out as a corporation.

The judgment is affirmed, with costs.

ZOLLARS, J., did not participate in the decision of this case.

