[Floyd, et al. v. State ex rel. Baker.]

# Floyd, *et al. v.* State *ex rel.* Baker.

## *Quo Warranto to Dissolve Corporation.*

(Decided June 11, 1912. 59 South. 280.)

1. *Appeal and Error; Review; Harmless Error.*—Under section 2890, Code 1907, this court will not review error which cannot affect the rights of the litigants or the result of the appeal.

2. *Corporations; Creation; Forfeiture of Charter.*—Where the articles of incorporation falsely state that the entire capital stock has been paid in when only a fifth had been paid in, such false statement is a direct contravention of the statute, and such a fraud on the public as warrants the forfeiting of the charter of the corporation.

3. *Same; Capital Stock; Property Valuation.*—Under sec. 234, Const. 1901, the valuation of property put on it by the promoters in delivering it to the corporation in lieu of cash, is not conclusive where it works fraud on the general public.

4. *Same; Organization.*—Under sections 3445, 3446 and 3447, Code 1907, a statement declaring that the entire capital stock had been paid in when only a fifth had been paid in, was in no sense a compliance with the statute, and rendered the incorporation void.

5. *Same; Forfeiture of Franchise.*—While a corporation organized in the probate court, valid on its face, cannot be attacked collaterally, on direct attack it may be overthrown by showing want of compliance with the statute relating to the amount of paid in capital.

6. *Quo Warranto; Who May Bring.*—If the public good will also be served thereby quo warranto proceedings to test the validity of the corporate franchise will not be dismissed merely because the relator might be benefited by a judgment of ouster.

7. *Same; Proceedings; Evidence.*—It was admissible to show that a part of the property which was claimed to have been paid in for the capital stock was never actually deeded to the corporation, in an action of quo warranto to oust the corporation of its franchise.

8. *Same; Judgment; Ouster.*—The trial court in granting or refusing a judgment ousting a corporation of its franchise may exercise a sound discretion, and this discretion should be enlightened by proper evidence.

9. *Same; Parties.*—Under section 5456, Code 1907, the purported corporation may be made a party to the quo warranto brought against persons acting as such corporation, but without a corporate franchise.

APPEAL from Pickens Circuit Court.

Heard before Hon. BERNARD HARWOOD.

Quo warranto by the state on the relation of Mrs. Sallie D. Baker against S. H. Floyd, and others. Judgment granting the writ and respondents appeal. Affirmed.

BONDURANT & SMITH, for appellant. Counsel discuss the pleadings, but in view of the opinion it is not deemed necessary to set them out. In the organization of corporations, the law need not be strictly complied with, and if the incorporators are satisfied, the state cannot complain if only 20% is paid in.—Sec. 3447, 3467, Code 1907; *Bolling v. Lagrange,* 87 Ala. 482; *Planters Co. v. Webb,* 144 Ala. 666; *Sparks v. Woodstock Co.,* 87 Ala. 294; *Owensboro W. Co. v. Bliss,* 132 Ala. 253; 1 Thompson on Corporations, 221-225; 13 Am. Rep. 78; 10 Cyc. 224; 10 Cyc. 1293; *Hall v. Selma Ry. Co.,* 6 Ala. 741; *Bibb v. Hall,* 96 Ala. 101. A deed without attestation may operate as an agreement to convey.—*Branch v. Smith,* 114 Ala. 463; *Hollis v. Harris,* 96 Ala. 288; Sec. 335, Code 1907, and authorities there cited. The courts do not look with favor upon proceedings brought for private gain.—*So. Bldg. Co. Case,* 132 Ala. 151; *L. & N. v. State ex rel. Gray,* 154 Ala. 156. On these authorities, counsel insist that the court was in error in granting the writ.

CHARLES STRONG, and McKINLEY, McQUEEN & HAWKINS, for appellee. It was competent to introduce evidence in respect of the so-called deed of Sallie D. Baker to the purported corporation, as respondents introduced the deed.—*West End, et al. v. State ex rel.,* 36 South. 423; 68 Pac. 75; 113 Mo. 33; 126 Cal. 541; *State v. Hogan,* 163 Mo. 43; *State v. Webb,* 97 Ala. 111. The deed was void as there was no grantee in esse.—13 Cyc. 527; 2 Cook on Corp. 1811. The issuance of fictitious stock

was fraud authorizing dissolution.—*Parsons v. Joseph,* 8 South. 788; *State v. Debenture G. & L. Co.,* 26 South. 601; *State v. Webb, supra; Elyton L. Co. v. Bir. W. & E. Co.,* 92 Ala. 407. False statements in the affidavit as to the amount paid in is fraud authorizing dissolution.— *West End v. State, ex rel., supra; State v. Hogan, supra;* 45 Penn. 411; 195 Mo. 15. The statute expressly authorizes the purported corporation to be joined as party defendant.

MAYFIELD, J.—This is a statutory quo warranto proceeding under chapter 128, §§ 5450-5472, of the Code, to "vacate the charter or annul the existence" of a private corporation, the Dancy Real Estate & Development Company. The announced purpose of the incorporation was the development of the town or village of Dancy, in Pickens county, Ala., and the buying and selling of real estate, etc. The relator, Mrs. Baker, and her husband, owned a great deal of land in and near the village of Dancy. The appellant Floyd was a business man of Birmingham, Ala., and one who had had some experience in promoting corporations. An arrangement or agreement was entered into by and between Floyd and the husband of Mrs. Baker and other parties to this proceeding, by which they attempted to promote and organize the corporation for the purposes mentioned. The appellants' statement of this arrangement or agreement is as follows: "It was understood between Mr. and Mrs. Baker and witness that 76 lots were to be deeded to the Dancy Real Estate & Development Company, and these were one-half of the lots owned by Mr. and Mrs. Baker; and that he was to have one-half of these lots or their equivalent in the capital stock of the company. Witness stated that the agreement was well understood by both Mr. and Mrs. Baker before the deed was executed to the

company, and that Mrs. Baker understood this when the deed was made to the company."

The relator's contention is that the attempted organization of the corporation was illegal and void, and that it was a fraud upon the law and the public. The main grounds upon which she bases her information or complaint are that at the time the corporation was organized it was certified to the probate court by the incorporators that each of the subscribers had paid in full his subscription to the capital stock of the proposed corporation; that this certificate was false and therefore a fraud in law; that a number of the subscribers had not paid any part of their subscriptions at the time the certificate was filed, nor at the time they so certified that such subscriptions had been paid; that by far the greater part of the subscriptions had never yet been paid, notwithstanding the certificate that all had been paid up. S. H. Floyd, one of the promoters, subscribed for 306 of the 356 shares, amounting to $7,650, and certified that all of this amount had been paid; whereas, the relator asserts, not a cent of it had really been paid. The incorporators claimed that this subscription was paid by a conveyance or deed of 74 lots of the relator's land to the proposed incorporation, while she states that she never executed such a deed, that she signed such a paper, but that it was never delivered, nor intended to be delivered by her to the corporation or to any other person, except upon certain conditions hereafter stated; that it was not properly attested, and was not acknowledged at all; that the instrument was not to be delivered until she was paid the purchase price mentioned by the grantee, the intended corporation; that no part of the purchase price was ever paid to her, and that the purported attesting witness never attested it in her presence, or with her knowledge or consent. She denies that this

conveyance was made or intended to be made by her as a gift to the corporation in payment of Floyd's subscription to the 306 shares of the capital stock.

It is further insisted by the relator that it is not mentioned or intimated in any of the incorporation papers or in the record thereof that only 20 per cent. of the subscription price was paid in cash; but that, on the contrary, the papers of the incorporation show on their face that 100 per cent. of the subscription had been paid in cash, whereas, as a matter of fact, only a very small part of it had been paid at that time, and that the greater part of it had never been paid, and that the incorporation, for this reason, was invalid, and the charter subject to cancellation and annulment. She further contends that the law in both letter and spirit requires that the articles of incorporation, and the statement under oath of the party designated to receive the subscriptions shall show whether the entire 100 per cent. or only 20 per cent. of the subscriptions had been paid in, and that the papers in question purported to show on their face that 100 per cent. thereof had been paid, when, in fact, only a very small part had been paid, and that such misstatement as to the amount paid in was a fraud upon the law.

The certificate and the articles of incorporation contain, among other things, the following recitals material to this inquiry:

"(4) The amount of the authorized capital stock shall be fifteen thousand dollars ($15,000.00)' which said stock shall be divided into six hundred (600) shares of the par value of twenty-five dollars ($25.00) each, and said corporation shall begin business with $8,900.00 eighty-nine hundred dollars of said capital stock paid up.

"(5) S. H. Floyd, whose post office address is Birmingham, Jefferson county, Alabama, is designated by the incorporators as commissioner to receive subscriptions to the capital stock of the said corporation.

"(6) The names and post office addresses of the incorporators, with the number of shares subscribed for by each set out opposite their respective names, are as follows:

| Names of Incorporators. | Post Office Addresses. | No. of Shares. |
| --- | --- | --- |
| S. H. Floyd, | Birmingham, Alabama, | 306 |
| T. A. Baker, | Dancy, Alabama. | 10 |
| Samuel Clark, | Dancy Alabama. | 10 |
| W. D. King, | Dancy, Alabama. | 20 |
| W. F. Skinner, | Dancy, Alabama. | 10 |

"I, S. H. Floyd, the person authorized by the incorporators of the proposed Dancy Real Estate & Development Company to receive subscriptions to the capital stock thereof, do hereby certify that the above is a correct list of the subscribers to the capital stock of said corporation. I further certify that S. H. Floyd is privileged to discharge his subscription by transferring and conveying certain real estate situated in Pickens county, Alabama.

"I further certify that I have received from T. A. Baker the sum of two hundred and fifty dollars ($250.00); that I have received from Samuel Clark the sum of two hundred and fifty dollars ($250.00); that I have received from W. D. King the sum of five hundred dollars ($500.00); and that I have received from W. F. Skinner the sum of two hundred and fifty dollars ($250.00), as payment in full of their respective subscriptions to the capital stock of said Dancy Real Estate & Development Company.

"I further certify that I have received from S. H. Floyd a warranty deed executed by T. A. Baker and his

wife, Sallie D. Baker, conveying to said Dancy Real Estate & Development Company certain real estate, same being specifically subscribed in said deed, situated in the west half of the southwest quarter of section thirty-four (34) and in the east half of the southeast quarter of section thirty-three (33), all in township twenty-four (24), range three (3) west, in Pickens county, Alabama, according to the survey of Thomas A. Baker as certified to by Wm. Toxey C. E., and recorded in the probate office of Pickens county, Alabama, as payment in full of his subscription to the capital stock of said Dancy Real Estate & Development Company, said real estate being of the reasonable value of seventy-six hundred and fifty dollars.

"Witness my hand and seal this the 3rd day of November, 1910.

"S. H. Floyd.    [Seal.]

"Sworn to and subscribed before me this the 3rd day of November, 1910.

"Samuel Clark, Notary Public."

Trial by jury was waived, and the cause heard and determined by the judge of the Sixth judicial circuit, who, under agreement of the parties, rendered his judgment in vacation.

A demurrer being interposed to the original information and having been sustained thereto, the information was amended; the defendants then moved to quash the amended information, which motion was overruled and denied. Defendants then demurred to the amended information as a whole, and to each count or paragraph thereof. The demurrer to counts 30, 32, and 33 was sustained, and as to the other counts was overruled. The defendants then filed their answer to the information, and on motion of plaintiff certain portions of paragraphs 5 and 22 and also Exhibit B to said answer,

were stricken. Demurrer was also sustained to certain paragraphs of the answer and overruled as to others, as shown by the judgment entry in the case.

The trial court did not make a special finding of the facts, but did set out in the judgment entry its conclusions as to the facts as shown by the weight of the evidence, such conclusions of facts being too lengthy to be here set out; but it is sufficient to say that these supported the material allegations of the complaint or information. That court entered the following judgment: "It is therefore considered by the court, and it is the order and judgment of the court, that the said Dancy Real Estate & Development Company was never legally organized as a corporation under the laws of the state of Alabama, and that the respondents are guilty, as charged in the information, of usurping and using corporate franchises, rights, and immunities, and that the attempted organization and incorporation of said Dancy Real Estate & Development Company be, and the same hereby is, declared null and void, and that the respondents be, and they hereby are, forever enjoined from using, or attempting to use, corporate rights, franchises, and immunities under the said name of Dancy Real Estate & Development Company. It is further ordered and adjudged by the court that the respondents pay the costs of this proceeding, for which let execution issue."

From this judgment defendants appeal, and assign 74 errors as grounds for reversal.

### OPINION.

Appellants group their assignments of error in their brief and argument; and we will so treat them in attempting to answer the various propositions of law in-

sisted upon. Many of the assignments of error can have no effect upon the rights of the litigants or upon the result of the appeal, so we will treat only these insisted upon or which can affect the result, under section 2890 of the Code, which reads as follows: "The Supreme Court may, upon the reversal of any judgment or decree remand the same for further proceedings, or render such judgment or decree as the court below should have rendered, when the record enables it to do so."

The first proposition of law insisted upon by appellants is that the law as to the organization of corporations does not have to be strictly complied with; that, if the incorporators agree that this was a reasonable value, then such should be taken in consideration to show compliance with the statute; that the incorporators themselves were the parties deeply interested; and that the state cannot complain if 20 per cent. is paid in.

The second proposition is this: That the probate judge, as to the organization of corporations like the one in question, should not record the certificate until it complies with the provisions of this article. The probate judge is given judicial powers. As seen from the evidence, he returned the certificate to have it amended by adding the last two lines to same stating the property was of the reasonable value of $7,650.

The third proposition is this: That the real estate so conveyed was of the reasonable value of 20 per cent. of the amount of the capital stock; that, if the real estate was not of the value of 20 per cent. of the capital stock, the value of the real estate, with the amount paid in cash at the time, would exceed 20 per cent. of the capital stock.

The fourth proposition is that the cause is not instituted for the purpose of doing any good to the state of

[Floyd, et al. v. State ex rel. Baker.]

Alabama or its citizens, but is instituted for the relator's own private purpose.

The fifth is that the court erred in admitting evidence with respect to the execution of the deed by Mrs. Baker to the corporation which is claimed to have paid the subscription of Floyd to his stock.

The sixth proposition is that the corporation was improperly made a party defendant to the proceedings.

All of the assignments of error can be referred to one or more of these six propositions, and we understand appellants' brief to so treat them. The trial court decided each of these propositions against the contention of appellants, and, we think, properly, as we shall attempt to show.

As to the first proposition, while it has been decided (and we think correctly) that the statutes as to organizing corporations need not be literally complied with, and that a substantial compliance is sufficient, yet the mere fact that the incorporators agree upon the value at which property shall be taken in payment of subscriptions to the capital stock is not conclusive as to a compliance with the statute and the Constitution upon this subject. Nor do we think that the statute is concluded in a case like this, if 20 per cent. of the capital stock is paid in, although the articles of incorporation certify that all or 100 per cent. of that subscribed has been paid in. While the statute authorizes organization if 20 per cent. only of the subscriptions has been paid in, the record of incorporation must show this fact; and the creditors have prima facie a claim or right to proceed against the subscribers for the other 80 per cent. This debt or liability of the stockholders, then, is an asset of the corporation, available to its creditors under certain conditions. But, if the incorporation's proceedings show, on their face, that the stock subscribed for has

been paid in full, then prima facie, at least, there is no liability of the stockholders to the corporation or to its creditors. If the record of the corporation or quasi corporation, relied on, recites that all stock is paid for, when only 20 per cent. thereof is paid, then there is a fraudulent pretense as to the assets of the corporation. It is represented to the public, who are invited to deal with it, that all of its assets are available to it in cash or in property at cash value; whereas, if only 20 per cent. thereof is paid, or property is taken in payment of the subscription, which is worth only twenty per cent. of the amount of the debt or claim paid thereby, then the corporation is worth only one-fifth of what it professes to be worth—only one-fifth of what its promoters and incorporators hold it out to the public to be worth. This would clearly be a fraud upon the public, and would authorize the state to annul the charter, because an obvious abuse of the franchise, or an evasion of the law as to the organization of such corporations.

The mere fact that the incorporators agree upon the value at which property shall be taken in payment to the subscriptions to stock does not foreclose the state as to inquiry upon that subject in a direct attack like this. The stockholders, who are usually promoters and incorporators, are benefited by a fictitious valuation. It is the public and the creditors who will probably suffer on account of such inflated valuation. Our Constitution (section 234) provides as follows: "No corporation shall issue stocks or bonds except for money, labor done, or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and bonded indebtedness of corporations shall not be increased except in pursuace of general laws, nor without the consent of the persons holding the larger amount in value of stock, first obtained at a meeting to be held

thirty days after notice, given in pursuance of law." In the case of *Williams v. Evans,* 87 Ala. 725, 727, 6 South. 702, 703 (6 L. R. A. 218), it is said: "One of the purposes of this clause of the Constitution was to protect the public, as well as stockholders, against spurious and worthless stock by the process of watering; in other words, from fraudulently issuing and putting on the market fictitious corporate stock, which is based on nothing valuable as a consideration for its issue.— *Fitzpatrick v. Dispatch Pub. Co.,* 83 Ala. 604, 2 South. 727; *Memphis & Little Rock R. R. Co. v. Dow,* 120 U. S. 287, 7 Sup. Ct. 482, 30 L. Ed. 595; *Peoria v. Springfield R. Co. v. Thompson,* 103 Ill. 187. It is greatly to the interest of the public that the policy of this provision should be enforced." There is no difference between putting watered stock upon the market, and then allowing same to be paid for in full, in chips and whetstones, or in property valued at five times its real worth, and accepting 20 per cent. of the value in full payment of the subscriptions. Either act is a fraud upon the public and the creditors.

Our statutes as to incorporations (Code, §§ 3445 et seq.) provide, in substance: (1) That the incorporators must make and file a certificate pursuant to the provisions of article 1, c. 69, of the Code.—Code, § 3445. (2) This certificate of incorporation must be signed by all of the subscribers to the capital stock named therein, and shall set forth: (a) the name of the corporation; (b) the object for which it is formed; (c) the location of its principal office; (d) the amount of its total authorized capital stock, the number of shares into which it is divided, and the amount of capital stock with which it will begin business; (e) the name and postoffice address of the officer or agent designated by the incorporators to receive subscriptions to the capital

stock; (f) the names and post office addresses of the in-
corporators, the number of shares subscribed for by
each, and the names and post office addresses of the of-
ficers and directors chosen for the first year; and (g)
the time, if any, limited for the duration of the corpo-
ration.—Code, § 3446. (3) These subscriptions to the
capital stock must be paid in cash, unless the "sub-
scription list" shall provide otherwise, in which latter
event the same may be discharged "by the rendition of
stipulated necessary services, or the performance of
stipulated necessary labor, or the transfer of property,
at the reasonable value thereof," but in case the sub-
scription list shall state the names of such of the sub-
scribers as are privileged to discharge their subscrip-
tions otherwise than by the payment of money.—Code,
§ 3467. (4) A statement under oath must be made and
filed by the officer or agent authorized to receive sub-
scriptions, showing the amount of capital stock which
has been paid in, and the amount of capital stock se-
cured by contracts for services or transfer of property,
and shall include a copy of the subscription list.—Code,
§ 3447. (5) The papers must be filed in the office of
the probate judge, and must be examined by him, and, if
the same (on their face) show a compliance with the
provisions of article 1 of chapter 69, then it is the duty
of the probate judge to file and record the same on the
payment of certain fees (Code, § 3448 et seq.).

In the case of *State ex rel., etc., v. Webb, et al.,* 97 Ala.
111, 117, 118, 12 South. 377, 380 (38 Am. St. Rep. 151),
it is said: "Any attempt to acquire corporate func-
tions by a pretentious or evasive compliance, no mat-
ter what the papers may say on their face, must be de-
nounced as a fraud upon the law. By this law a corpo-
ration is made self-creative, and a grant of a franchise
is made to flow from the act of the grantee. The act is

the grant, but, to have this effect, it must be what the law requires, and not a sham. Our conclusion is that it is clearly shown the defendants have attempted to acquire corporate life and power by a feigned compliance with the law, and their effort must therefore be adjudged abortive. In *Paterson v. Arnold,* 45 Pa. 410, the Supreme Court of Pennsylvania held that, when a company is incorporated by act of assembly, the charter is conclusive evidence of its validity, but, when the act or organization is under the general manufacturing law, the charter, though binding on its members, covers no fraud that may have been used in forming it; that the omission of stockholders to pay their stock as required by law is a violation of the law by which the charter was procured, and it is no shield against creditors. The Indiana court, on appeal, in an action of quo warranto, brought under a statute similar to ours, against individuals, challenging their right to act as a railroad corporation attempted to be organized under the general law, say: 'Merely simulated subscriptions made by persons who are neither actually nor apparently able to pay the amount subscribed cannot answer the purpose of the statute. * * * They are an attempt to acquire corporate functions, not by compliance with law, but by a disingenuous evasion of it.'—*Holman v. State,* 105 Ind. 569, 5 N. E. 702. Our own court, in line with these decisions, in an adjudication on a similar incorporation statute, held that the conditions to organization, as laid down in the statute, are prerequisite to rightful, lawful organizations, and that it is only when these things are done that the subscribers become a body corporate, with the powers conferred by the laws on private corporations.—*Cen Ag. & Mech. Ass'n v. Ala. Gold Life Ins. Co.,* 70 Ala. 131; *Spars v. Woodstock Iron Co.,*

87 Ala. 204 [6 South. 195]." This disposes of the first, second, and third propositions insisted upon.

It may be that the relator is moved to institute this proceeding partly on account of personal interest in the result; but it also appears that her act in so instituting it is for the public good, and we are not willing to decide that merely because she may have a personal interest in the result the proceeding should be dismissed. The proceeding is not to settle disputed rights between stockholders, nor to avenge private wrongs which can be more appropriately redressed in private suits; yet the statute authorizes the suit in the name of the state on the relation of any person who will give security for the costs, which this relator has done; and because she or the promoters may be injured or benefited by the result is no reason for denying the relief, if the public good require that the charter be annulled. It was said by this court in *State ex rel. Johnson v. Southern Building & Loan Association*, 132 Ala. 56, 31 South. 376: "True, wrongs to individuals may be made the predicate of an information of the kind, but they should be of such a character as that they involve in the sense mentioned an offense also against the grant of the state. Wrongs done creditors and stockholders in the course of the administration of the company's affairs, by the assumption of questionable rights, should not be made a ground of forfeiture, especially when it appears a remedy exists otherwise."

We find no reversible error as to the admission of evidence touching the execution of the deed by Mrs. Baker to the corporation. This was a part of the res gestae of the organization of the corporation, and, as claimed by the appellants, constituted the chief asset of the corporation.

It is well settled that in proper cases the court may exercise a sound discretion in granting or refusing a judgment of ouster.    Mr. Thompson (Corporations, § 6812) states the rule thus: "If it is a sound view that the court may give or refuse judgment of ouster in the exercise of a sound discretion under all the circumstances disclosed by the evidence, and according to justice and equity, then it must equally follow that evidence is admissible, having no other tendency than to enlighten the court in the exercise of this discretion, and it should seem that, for this reason, the evidence should be allowed to take a wide range."

It has been repeatedly ruled in this state that a corporate organization, under the general law, in the probate court, though apparently valid on its face, is not conclusive in a direct attack like this; but that it is conclusive on collateral attack.    In the case of *Bibb v. Hall & Farley,* 101 Ala. 96, 14 South. 102, it is said: "It must be admitted that a substantial compliance with all the terms of a general incorporation law is a prerequisite to the formation of a corporation under it.—1 Morawetz on Corp. § 27 et seq.; 1 Spelling, §§ 37, 38; *Cen. Agr. & Mech. Ass'n v. Ala. G. L. Ins. Co.,* 70 Ala. 120.    But, as was well said in the case last cited: 'When an association of persons is found in the exercise and user of corporate franchises, under color of legal organization, their existence as a corporation cannot be inquired into collaterally.    In a direct proceeding by the government they may be ousted.    *    *    *    The corporation exists de facto, is subject to all the liabilities, duties, and responsibilities of a corporation de jure.    It would produce only disorder and confusion, embarrass, and endanger the rights and interests of all dealing with the association, if the legality of its existence could be drawn in question in every suit to which it was

a party, or in which rights were involved, springing out of its corporate existence. No judgment could be rendered which would settle the question finally. But, when the government intervenes by an appropriate proceeding, the judgment is final and conclusive, putting an end to all controversy.' "

What was said in the case of *West End v. State*, 138 Ala. 302, 36 South. 425, as to the organization of a municipal corporation, is true under the general statute as to the organization of a private corporation. It is there said: "The law provides no way for contesting the petition or whereby the probate judge can judicially ascertain the qualifications of the petitioners. His action upon the petition cannot, therefore, be regarded as other than ministerial, or as precluding inquiry into the validity of the petition in a proper and direct attack upon the proceedings."

The subscriptions to all the stock in this corporation were absolute, and made payable in cash before the organization was perfected. The grant of the franchise by the state is made dependent upon this payment as subscribed and as certified. The promoters, who were subscribers, could not, by a secret agreement, release each other, nor agree to accept lands in payment of the subscription. While the statutes authorize the payment to be made in labor, services, or property, the articles of incorporation must show this, and show that it is done in accordance with the statute. It will not do to allow corporations to be organized, with the papers and records of organization showing that all the stock has been paid in cash, when, as a matter of fact, it has not been so paid, but the subscriber has been discharged or released in consideration of part payment, or by the conveyance of property at fictitious values. The Supreme Court of the United States in the case of *Burke v.*

*Smith*, 16 Wall. 390, 396, 21 L. Ed. 361, has declared the law upon this subject as follows (the opinion being approved and quoted by Mr. Thompson): "When a company is incorporated under general laws,   *   *   * and the law prescribed that a certain amount of stock shall be subscribed before corporate powers shall be exercised, if subscriptions obtained before the organization was affected, may be subsequently rendered unavailable by conditions attached.to them, the substantial requirements of the laws are defeated. The purpose of such a requisition is that the state may be assured of the successful prosecution of the work, and that creditors of the company may have, to the extent at least of the required subscription, the means of obtaining satisfaction of their claims. The grant of the franchise is, therefore, made dependent upon securing a specified amount of capital. If the subscriptions to the stock can be clogged with such conditions as to render it impossible to collect the fund which the state required to be provided before it would assent to the grant of corporate powers, a charter might be obtained without any available capital." Mr. Thompson adds: "Another principle is that parol conditions, varying the terms of the written subscription and not involving a fraud on the subscriber, are void, and the subscription stands as made, such, for instance, as the condition that the payment should be made in land, instead of money, or that the subscriber is not to pay for the stock, but that his subscription is to be canceled." It therefore follows that the contract or agreement between the corporation as to taking the conveyance of these lots in payment of the 306 shares of stock and the certifying that all the subscriptions had been paid in cash, when, in fact, only a small part thereof had been paid, rendered the organization illegal, and subject to be annulled at the suit of

the state. Moreover, it conclusively appears that the deed purporting to convey these lots was never in fact executed, in that it was not acknowledged, and was not properly attested, and was never delivered by the grantor. Both of the attesting witnesses say that they never saw the grantor sign it, that they never heard her acknowledge that she did sign it, and that they know nothing about her signing it except what others told them about it. They all testified that they had no authority from the grantor to deliver it; and she testified that she never intended for it to be executed or delivered until the recited consideration was paid, and that not a cent was ever paid to her. The paper was therefore wholly worthless to either the corporation or its creditors, while on its face it purported to convey $7,650 worth of property.

Whether we accept the theory of the relator or that of the appellants, the court properly annulled the charter. While the evidence was in conflict as to the bona fides of the incorporation, and each party accused the other of acting in bad faith, it is not necessary for us to review the findings of the trial court as to these disputed facts, for the reason that, if the facts were found as claimed by the appellants, still the organization would be illegal, and was therefore properly annulled by the trial court.

The statute expressly authorizes the corporation to be made a party to the proceedings.—Code, § 5456.

It therefore follows that the judgment of the trial court must be affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., and MCCLELLAN, J., not sitting.